UNITED STATES, Appellee,

v.

Henry A. RUPPEL, Master Sergeant,
U.S. Air Force, Appellant.

No. 97–0699.
Crim.App. No. 31891.

U.S. Court of Appeals for
the Armed Forces.

Argued June 3, 1998.

Decided Sept. 29, 1998.

For Appellant: *Captain Harold M. Vaught* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Major Karen L. Manos,* USAFR (argued); *Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin,* and *Major J. Robert Cantrall* (on brief).

*Opinion of the Court*

GIERKE, Judge:

In June 1993, a general court-martial composed of officer members convicted appellant, contrary to his pleas, of sodomy on divers occasions with CH, his minor stepdaughter; committing indecent acts with CH; taking indecent liberties with CH (2 specifications); and committing an indecent act with JR, his natural daughter, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The court-martial sentenced appellant to a bad-conduct discharge, confinement and partial forfeitures of pay for 11 years, and reduction to the lowest enlisted grade.

The convening authority ordered a post-trial factfinding hearing to determine the validity of a defense complaint that "the Government failed to disclose relevant" and material "information requested by the defense" under RCM 701, Manual for Courts–Martial, United States (1995 ed.). The military judge who conducted the post-trial hearing found that the complaint was valid. The staff judge advocate recommended a rehearing on all surviving offenses involving CH and on the sentence. The convening authority accepted that recommendation and ordered a combined rehearing on the specifications involving CH and on the sentence. The convening authority did not disturb the finding of guilty of an indecent act with JR. (GCMO No. 41 dated July 11, 1994.)

At the rehearing, a general court-martial composed of different officer members again convicted appellant of the offenses involving CH and sentenced him to a bad-conduct discharge, confinement and partial forfeitures of pay for 7 years, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence and ordered a 38–day credit against the confinement. The Court of Criminal Appeals affirmed the findings, with a minor modification of the GCMO to conform to the finding at the first trial, and affirmed the approved sentence on reassessment. The Court of Criminal Appeals also ordered that "appellant receive 381 days credit for the confinement served between

June 25, 1993 and July 10, 1994." 45 MJ 578, 589.

Our Court granted review of the following issues:

## I

WHETHER, AT THE RETRIAL ON THE MERITS, THE MILITARY JUDGE VIOLATED RCM 810(a)(3) BY IMPROPERLY ADMITTING EVIDENCE OF THE OFFENSE WHICH WAS BEING REHEARD ON SENTENCE ONLY (CHARGE II, SPECIFICATION 5) UNDER MIL.R.EVID. 404(b) AS "OTHER CRIMES" EVIDENCE.

## II

WHETHER THE MILITARY JUDGE'S RULING UNDER MIL.R.EVID. 404(b) AS DISCUSSED IN ISSUE I RAN AFOUL OF NOTIONS OF FUNDAMENTAL FAIRNESS AND THIS HONORABLE COURT'S RECOGNITION THAT A REHEARING IS "A CONTINUATION OF THE FORMER PROCEEDINGS."

## III

WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S REQUEST FOR SENTENCE CREDIT FOR THE PERIOD OF TIME THAT HE WAS RESTRICTED TO A MENTAL HEALTH WARD, IN SPITE OF THE TRIAL JUDGE'S FINDING AT THE FIRST TRIAL THAT APPELLANT WAS ENTITLED TO SUCH CREDIT BECAUSE THE CONDITIONS CONSTITUTED RESTRICTION TANTAMOUNT TO CONFINEMENT.

For the reasons set out below, we reject these claims of error.

*Issues I and II: "Other Crimes" Evidence*

■ At the first trial in June 1993, appellant moved to sever the charges involving CH from those involving JR. The motion was denied, but the military judge gave a "spillover" instruction to the members as to the two sets of offenses. Although charged with both sodomy and committing an indecent act with JR, appellant was convicted only of the indecent-act offense.

When the convening authority disapproved the findings of the first court-martial, he did not disapprove the finding of committing an indecent act with JR. The offense with JR was submitted to the court-martial for rehearing as to sentence only.

At the beginning of the rehearing of the charges involving CH, the Government moved *in limine* to present testimony of JR regarding the indecent act. Judge Altschwager had replaced Judge Blommers, the military judge at the original trial. He was initially skeptical about trial counsel's request, but he eventually agreed with the Government and concluded that the evidence was relevant on the issue of appellant's intent. Thus, subject to cautionary instructions, he allowed JR to testify about appellant's indecent acts with her (*i.e.*, taking her hand and forcing her to touch his penis). However, he specifically ordered the Government to refrain on findings from any mention of the fact that appellant had been convicted of that act during the initial proceedings.

Immediately after JR testified, the military judge instructed the members as follows:

> [T]he evidence that the accused may have sexually abused [JR] may be considered by you for the limited purpose of its tendency, if any, to prove a plan or design of the accused to: molest prepubescent girls and to prove that the accused intended by his act to gratify his lust. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and he, therefore, committed the offenses charged.

In his instructions on findings at the conclusion of the rehearing on the merits, the military judge gave the following limiting instruction:

> Evidence that the accused may have sexually abused [JR] and allowed [CH] to smoke cigarettes and drink alcohol may be considered by you for the limited purpose of its tendency, if any, to: prove a plan or

design of the accused to molest prepubescent girls and to prove that the accused intended by his acts to gratify his lust.

You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offenses charged.

As he did at trial, appellant asserts that the plain language of RCM 810(a)(3) precludes any reference to the offense involving JR at the rehearing on the merits of the offenses involving CH. He argues that permitting introduction of JR's testimony under Mil.R.Evid. 404(b), Manual, *supra*, violates fundamental fairness. The Government asserts that RCM 810(a)(3) does not preclude consideration of evidence that is independently admissible under Mil.R.Evid. 404(b).

RCM 810(a)(3) provides: "When a rehearing on sentence is combined with a trial on the merits of one or more specifications ... the trial will proceed first on the merits, without reference to the offenses being reheard on sentence only." Although this Court has not been called upon before this case to examine the relationship between RCM 810(a)(3) and Mil.R.Evid. 404(b), it has done so with respect to a similar provision in RCM 910(g), Discussion, which enjoins military judges from "informing the members of the offenses to which the accused has pleaded guilty until after the findings on the remaining offenses have been entered." In *United States v. Rivera*, 23 MJ 89, 96 (1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 157 (1987), this Court held that evidence supporting the offense to which an accused has pleaded guilty may be received to prove a contested offense "if it qualifies for admission under Mil.R.Evid. 404(b) and is not unduly prejudicial under Mil.R.Evid. 403."

While the defense argument that the "plain language" of RCM 810(a)(3) prohibits evidence pertaining to offenses being reheard on sentence only has some facial appeal, it also would have the effect of elevating a procedural rule into an evidentiary rule and, in cases like appellant's, rendering Mil. R.Evid. 404(b) meaningless in combined rehearings. In our view, RCM 810(a)(3) must be construed as we construed RCM 910(g), Discussion, in *Rivera* in order to maintain the viability of Mil.R.Evid. 404(b) in combined rehearings. Accordingly, we hold that the evidence underlying appellant's conviction of the offense with JR was not rendered inadmissible by RCM 810(a)(3).

We reject appellant's assertion that fundamental fairness is violated by this interpretation. The requirement for fundamental fairness is maintained by proper application of Mil.R.Evid. 403 and 404(b).

■ We turn then to the question whether the evidence was admissible under Mil. R.Evid. 403 and 404(b). We review the military judge's ruling admitting the evidence for clear abuse of discretion. *United States v. Miller*, 46 MJ 63, 65 (1997).

■ Under Mil.R.Evid. 404(b), evidence of "other crimes, wrongs, or acts" may be admitted if the evidence

(1) reasonably support[s] a finding that an accused committed prior crimes, wrongs, or acts; (2) make[s] a fact of consequence more or less probable; and (3) possess[es] probative value that is not substantially outweighed by its danger for unfair prejudice.

*Miller*, 46 MJ at 65, citing *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989).

In *United States v. Castillo*, 29 MJ 145, 150 (1989), this Court set out the test for admissibility under Mil.R.Evid. 404(b), as follows:

[T]he sole test under Mil.R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses.

*See also Miller, supra* at 65. In this case, the military judge admitted the evidence as probative of appellant's plan or design and of his intent to gratify his lust. We agree that the evidence was probative on those two issues. *Id.; see also United States v. Mu-*

*noz,* 32 MJ 359 (CMA), *cert. denied,* 502 U.S. 967, 112 S.Ct. 437, 116 L.Ed.2d 456 (1991).

 The only remaining question is whether the evidence was unduly prejudicial under Mil.R.Evid. 403. Where a military judge properly conducts the balancing test under Mil.R.Evid. 403, we will not overturn his decision unless there is a clear abuse of discretion. *United States v. Miller, supra,* citing *United States v. Lake,* 36 MJ 317, 322 (CMA 1993). In this case the military judge made detailed findings of fact and conclusions of law. He weighed the probative value of JR's testimony against its prejudicial impact and ruled that JR would be permitted to testify about the indecent act, but not about the sodomy of which appellant was acquitted. The military judge twice gave limiting instructions concerning the purpose for which JR's testimony was admitted. On the basis of this record, we hold that the military judge did not abuse his discretion.

*Issue III: Sentence Credit*

At his original court-martial, appellant requested sentence credit for 18 days for the time spent in the psychiatric ward at Keesler Medical Center. Judge Blommers found that the conditions were tantamount to confinement and awarded appellant 18 days' credit toward the service of any sentence to confinement.

At the rehearing, appellant again requested sentence credit for the 18 days. The record reflects that appellant was arrested by civilian authorities for offenses that led to his court-martial and confined in the Harrison County Jail from October 29 until November 5, 1992. On November 5, 1992, at appellant's request, he was released from the Harrison County Jail on a $50,000 personal recognizance bond, on the condition that he "report immediately as an in-patient to the mental health facilities, Keesler Air Force Base, Biloxi, Mississippi," and "remain [there] until declared fit for duty." He was released from the Keesler Medical Center on November 23, 1992. Appellant's medical records at Keesler reflect that he asked to be admitted and was suffering from anxiety, depression, and suicidal thoughts.

Appellant testified that, while in the psychiatric ward, he was allowed to make telephone calls at "certain times," that he was "not free" to attend his duty station, not "free to go smoke," was "escorted everywhere," and was required to have a "special written pass" to leave the ward.

After hearing the evidence, Judge Altschwager found that appellant was not ordered into the psychiatric ward by any military authority, that appellant voluntarily entered the facility to meet the requirement for release from the Harrison County Jail, and that "[i]t was a voluntary choice." Judge Altschwager found that "[n]o evidence has been presented that the restrictions were more restrictive than necessary to protect the patient's health." He observed that appellant's "[c]ounsel cites no cases to support his theory that restrictions placed upon a psychiatric inpatient being evaluated for suicidal ideation are restrictions tantamount to confinement." Judge Altschwager concluded that the conditions were no "more restrictive than necessary to protect the patient's health." Accordingly, he denied appellant's request for sentence credit.

Appellant now asserts that Judge Altschwager's reversal of Judge Blommers' order giving him sentence credit violates constitutional due process and the law-of-the-case doctrine. The Government asserts that due process does not entitle appellant to the administrative credit awarded by Judge Blommers and that the law-of-the-case doctrine is inapplicable because there was no final determination that Judge Blommers' ruling was correct.

In *United States v. Beatty,* 25 MJ 311, 314 (1987), this Court examined the legislative history of Article 63, UCMJ, 10 USC § 863, and concluded that "[a] rehearing is a continuation of the former proceeding." Thus, Judge Altschwager was in the same position when he denied appellant's request for sentence credit as he would have been if he had presided at the original court-martial. There is no statute, or procedural or evidentiary rule, that prohibits a military judge from reconsidering and reversing an earlier ruling of this type.

■ However, appellant cites the Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), for the proposition that he is entitled under the Fifth Amendment to the administrative credit awarded by Judge Blommers at the first trial. *Pearce* held that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." 395 U.S. at 718–19, 89 S.Ct. 2072 (footnote omitted). The Court specifically pointed out that "[s]uch credit must, of course, include the time credited during service of the first prison sentence for good behavior, etc." 395 U.S. at 719 n. 13, 89 S.Ct. 2072. Appellant argues that this aspect of the Supreme Court's holding entitles him to the administrative credit awarded by Judge Blommers for restriction tantamount to confinement while he was in the Keesler psychiatric ward.

Appellant also cites *Pearce* for the proposition that he may not be punished for asserting his rights by imposition of a more severe sentence at a retrial. *See* 395 U.S. at 725, 89 S.Ct. 2072. He argues that Judge Altschwager's reversal of Judge Blommers' award of 18 days' credit punished him for having successfully asserted his rights and, thus, violated this aspect of *Pearce*.

■ We reject appellant's reading of *Pearce*. At the outset, we must note that the nature of sentencing by courts-martial is different from that of civilian courts. Unlike a civilian-court sentence, a court-martial "sentence is inchoate" until it is approved by the convening authority. *United States v. Goode*, 1 MJ 3, 5 (CMA 1975); *see also* para. 3.6, Army Regulation 190–47, The Army Corrections System (August 15, 1996) (distinguishing between "adjudged" prisoners whose sentence has only been announced by a court-martial and "sentenced" prisoners whose adjudged sentence has also been approved by the convening authority). Thus, it is an open question whether appellant was "sentenced" within the meaning of the Fifth Amendment at the first trial, since that sentence was never approved by a convening authority.

We need not resolve that issue, however, because we conclude that *Pearce* does not entitle appellant to the 18 days of administrative credit awarded by Judge Blommers. *Pearce* entitles a resentenced accused only to credit for time served on a sentence, including time already credited for good behavior. It does not entitle him to credit for events, such as hospitalization, that were erroneously characterized as "tantamount to confinement."

■ Furthermore, *Pearce* does not address entitlement to credit for pretrial restraint; it addresses credit for time served after imposition of a sentence, not time served in pretrial restraint. Entitlement to credit for pretrial restraint is founded in statute, not the Constitution. *See United States v. Allen*, 17 MJ 126 (CMA 1984). Thus, *Pearce* is inapposite to appellant's claim that he is entitled to 18 days' credit as a matter of constitutional law.

Furthermore, the claim that he is entitled to 18 days' credit as a matter of constitutional law is not supported by *Pearce*. *Pearce* permits a more severe sentence to be imposed at a retrial, provided the reasons for the more severe sentence appear on the record "to assure the absence" of vindictiveness for having successfully attacked the first proceeding. 395 U.S. at 726, 89 S.Ct. 2072. The vindictive-punishment aspect of *Pearce* is not triggered when a less severe sentence is imposed at the retrial.

Appellant will serve a substantially lesser sentence as a result of his rehearing, even if he is not awarded the 18 days of administrative credit that he seeks. At his first trial, appellant was sentenced to confinement for 11 years. At his rehearing, he was sentenced to confinement for 7 years, and the Court of Criminal Appeals gave him credit for 381 days for confinement served between June 25, 1993 (the date he was sentenced at the original trial), and July 10, 1994 (the last day of confinement before the first adjudged sentence was disapproved).

Finally, we note that appellant was awarded full credit at his rehearing for the days

spent in pretrial confinement awaiting his rehearing, except for the 18 days at issue. Thus, even if appellant was entitled, as a matter of constitutional law, to credit for the 18 days awarded at his first trial, he received a sentence at the rehearing that is so substantially less than the original sentence as to moot any constitutional issue under *Pearce.* Accordingly, we reject appellant's assertion that Judge Altschwager's reversal of the earlier ruling offends constitutional due process.

■ We turn next to appellant's assertion that Judge Altschwager's action violates the law-of-the-case doctrine. The Supreme Court has explained the law-of-the-case doctrine as follows:

Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Law of the case directs a court's discretion, it does not limit the tribunal's power.

*Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (citation omitted). The doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

The federal circuits are split on the question whether the law-of-the-case doctrine applies only to final rulings. The First, Fifth, Eighth, and Tenth Circuits apply the doctrine only to final judgments. *See, e.g., Union Mutual Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 15 (1st Cir.1986); *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990); *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.,* 48 F.3d 1066, 1070 (8th Cir.1995); *Unioil v. Elledge,* 962 F.2d 988, 993 (10th Cir.1992). On the other hand, the Second, Third, Seventh, and Ninth Circuits apply the doctrine to all trial rulings. *See, e.g., DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 76–77 (2d Cir.1992); *Bridge v.*

*U.S. Parole Commission,* 981 F.2d 97, 103 (3d Cir.1992); *Wzorek v. City of Chicago,* 906 F.2d 1180, 1185 (7th Cir.1990); *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1393 (9th Cir.1995); *see also* Knight, *The Law of the Case Doctrine: What Does it Really Mean?,* The Federal Lawyer (October 1996).

■ In military practice, military judges have authority to reconsider and reverse their rulings at any time before the record is authenticated. *See United States v. Griffith,* 27 MJ 42, 47 (CMA 1988); RCM 905(f) (1995). In our view, the interpretation of the First, Fifth, Eighth, and Tenth Circuits, applying the law-of-the-case doctrine only to final rulings, is more consistent with military practice. Accordingly, we hold that law of the case only applies to final rulings and does not restrict a military judge's authority or discretion to reconsider and correct an earlier trial ruling.

■ Having decided that Judge Altschwager had authority to reconsider and reverse Judge Blommers' decision, we must next decide whether Judge Altschwager abused his discretion by denying appellant's request for 18 days of sentence credit. We conclude after our review of the record that Judge Altschwager's findings of fact are supported by the record and his conclusions of law are based on correct legal principles. Accordingly, we hold that he did not abuse his discretion.

### Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

EFFRON, Judge (concurring in part and in the result):

I agree with the majority's resolution of Issues I and II concerning admissibility under Mil.R.Evid. 403 and 404(b) of the evidence of the conduct underlying the charges relating to appellant's sexual abuse of JR. With respect to Issue III, I agree with the result reached by the majority but disagree

**254**

with the majority's discussion of the "law of the case" doctrine.

As noted by the majority, the "law of the case" doctrine, which concerns the discretion rather than the power of a court, provides that "when a court decides upon a rule of law" in a case, "that decision should continue to govern the same issues" during "subsequent stages in the same case." 49 MJ at 253 (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). The majority notes that the federal civilian circuits are split as to whether the "law of the case" doctrine applies to only final rulings or whether it also covers all trial court rulings. The majority adopts the view "that law of the case only applies to final rulings," 49 MJ at 253, asserts that the ruling of the military judge as to sentence credit was not final, and concludes that it was appropriate for the judge in the second proceeding to exercise his discretion to deny 18 days' sentence credit.

I do not agree with the majority's suggestion that application of the "law of the case" doctrine turns on characterization of the ruling at issue as a "final" ruling or judgment, 49 MJ at 253, or with the majority's characterization of the first military judge's ruling as an "earlier trial ruling," 49 MJ at 253. The military judge's grant of the 18–day sentence credit in this case constituted a final decision by the court on the issue of the sentence credit, which is binding on the Government. Under these circumstances, applicability of the "law of the case" doctrine to this case cannot be decided by claiming that the military judge's ruling is an "earlier trial ruling." 49 MJ at 253.

In the present case, the convening authority's action rendered the first trial a nullity as to the sentence; none of the rulings of the military judge in the first trial concerning sentence survived the action. Under those circumstances, the military judge in the second trial was free to revisit any of those rulings. *See, e.g., United States v. Akers,* 702 F.2d 1145, 1148 (D.C.Cir.1983). At a rehearing ordered by the convening authority or an appellate court, either the Government or the accused may relitigate a sentence-credit determination by the military judge at the first trial.

The power of military judges to grant sentence credit for pretrial confinement and restraint tantamount to confinement is a judicially-created remedy, adopted by this Court under our supervisory powers to enforce Article 13, UCMJ, 10 USC § 813, *see United States v. Larner,* 1 MJ 371 (CMA 1976); and Department of Defense instructions regarding computation of sentences, *see United States v. Allen,* 17 MJ 126 (CMA 1984). Even though a credit is related to the sentence and may be addressed during the sentencing proceeding, the sentence-credit determination is not part of the adjudged findings or sentence that Congress has determined should be final and not subject to judicial review (such as an acquittal or sentence cap). The basis for the credit is not a consideration in the sentencing process, and the credit itself is not a reduction of the sentence. The federal civilian cases that apply law of the case based upon a characterization of the ruling as final are not helpful because they do not deal with the type of nonstatutory, judicially-created remedy applicable in the present case, which is not readily classified as "final."

Under the "law of the case" doctrine, if an appellate-level decision is not appealed by the party adversely affected by the decision, that decision is binding for purposes of subsequent proceedings in that case. *United States v. Grooters,* 39 MJ 269, 272–73 (CMA 1994) (citing *United States v. Sales,* 22 MJ 305, 307 (CMA 1986)). The only means available for the Government to appeal the sentence credit would be via an extraordinary writ. Attempting to characterize the sentence credit as "final" or "non-final" is likely to encourage the Government to appeal every adverse sentence-credit determination. There is no need to do so. Instead, we should recognize that the judicially-created remedy of a sentence credit is not readily characterized as "final" or "non-final," and that the critical component for purposes of the "law of the case" analysis is that an appellate decision remanding the case for further sentencing proceedings renders the earlier decision a nullity, thereby permitting

reconsideration of the earlier ruling concerning sentence credit.

As to applicability of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which is relied upon by the dissent, I note that *Pearce* is based upon further proceedings which have the effect of creating a burden on the right of appeal. Ruppel was sentenced at his first trial to confinement for 11 years, and he was granted 18 days' sentence credit; on retrial, he received 7 years' confinement but was not granted the 18 days' credit. Because the effect of the retrial is that appellant will serve a shorter period of confinement (even without the 18-day sentence credit), I agree with the majority's conclusion that his right to appeal was not burdened in a way that implicates constitutional considerations.

SULLIVAN, Judge (dissenting):

The majority's overly-technical approach to this appeal disturbs me. I would hold that appellant should be given the 18 days' credit in accordance with the first military judge's ruling in this case. The bottom line is that the second military judge failed to affirmatively establish his innocent motivation for rejecting the prior sentence credit ordered by the first judge. This was required by *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). No more need be said.